IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW PERRONG,

Plaintiff,

v.

MACY'S INC., DEPARTMENT STORES NATIONAL BANK, FDS BANK and MACY'S CREDIT AND CUSTOMER SERVICES, INC.,

Defendants.

NO.

**COMPLAINT—CLASS ACTION**

**DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Andrew Perrong, by his undersigned counsel, for this class action complaint against Defendants Macy's Inc., Department Stores National Bank, FDS Bank and Macy's Credit and Customer Services, Inc. and their present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents (collectively, "Macy's"), alleging as follows:

## I. INTRODUCTION

1. Nature of Action: Macy's made 30 nonconsensual, nonemergency collections calls with prerecorded or artificial voices to a phone number for which Mr. Perrong was charged for incoming calls, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The telephone calls transmitted a prerecorded voice insisting that Plaintiff contact Macy's about a "personal business matter," although Plaintiff had no outstanding business matters with Macy's, personal or otherwise. Despite Plaintiff's hanging up and telling Macy's that he was not the person it was looking for, Macy's continued its relentless barrage of calls.

2. Mr. Perrong brings this action on behalf of himself and all those similarly situated, in hopes that an injunction and damages will encourage Macy's to stop robocalling or at least check whether it is robocalling the right person.

## II. PARTIES

3. Plaintiff Andrew Perrong is a citizen of Pennsylvania, residing in this District.

4. Defendant Macy's Inc. is a Delaware corporation with its principal place of business at 7 West Seventh Street, Cincinnati, Ohio 45202.

5. Macy's Inc. operates department stores in and does business in this District and throughout the United States.

6. Defendant Department Stores National Bank is a national banking association and the issuer of Macy's credit cards. Its principal place of business is at 701 East 60th Street, Sioux Falls, South Dakota 57104.

7. Department Stores National Bank solicits, advertises to and provides credit cards and financing to consumers residing in Pennsylvania and throughout the United States.

8. Defendant FDS Bank is a federal savings bank issuing consumer credit cards, owned by Macy's Inc., run by Macy's Inc. employees, engaged in the servicing of Macy Inc.'s credit cards. Its principal place of business is at 9111 Duke Boulevard, Mason, Ohio 45040.

9. FDS Bank services credit cards used in this District and throughout the United States.

10. Macy's Credit and Customer Services, Inc. is a corporation owned by Macy's Inc. that markets and collects upon Macy's-branded credit cards. Its principal place of business is at 9111 Duke Boulevard, Mason, Ohio 45040.

11. Macy's Credit and Customer Services, Inc. markets and collects upon credit cards in this District and throughout the United States.

12. Upon information and belief, each of the acts and/or omissions complained of herein was made known to, and ratified by, each defendant.

## III. JURISDICTION AND VENUE

13. Subject Matter Jurisdiction: This Court has federal-question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

14. Personal Jurisdiction: This Court has both general and specific personal jurisdiction over Macy's.

a. It has general jurisdiction over Macy's because Macy's operates 25 department stores in Pennsylvania, employing, on information and belief, thousands of Pennsylvanians and selling to tens of thousands of Pennsylvanians.

b. It has specific jurisdiction over Macy's because Macy's placed the calls at issue to Mr. Perrong, a Pennsylvanian, at a phone number bearing a Pennsylvania area code, registered to a Pennsylvania address, while (in most instances) he was in Pennsylvania.

15. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims occurred in this District and because Defendant resides in, i.e., is subject to personal jurisdiction in, this District.

## IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

16. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service ... or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

17. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

18. The FCC has ruled that the duty to obtain consent falls squarely on the shoulders of the robocaller. "We reiterate that the TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the

caller alone to ensure that he or she has valid consent for each call made using an autodialer, artificial voice, or prerecorded voice." *In re Rules & Regulations Implementing the TCP Act of 1991*, 30 FCC Rcd. 7961, 8004 ¶ 81 (2015).

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

20. In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10).

21. Congress further found: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

22. The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

23. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

24. As a remedial statute that was passed to protect consumers from unwanted automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

25. Since the enactment of the TCPA, the problem of unwelcome robocalls has gotten even worse. The FCC bemoans: "Unwanted calls, including robocalls and texts, are consistently

among the top problems consumers cite when filing complaints with the FCC each year." *Stop Unwanted Calls and Texts*, Federal Communications Commission, https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Feb. 17, 2018).

26. Over two billion robocalls are made every month, many of which are unwanted and illegal. 2.7 billion robocalls were placed nationwide last month—an average of more than one robocall every week per person affected. *Robocall Index*, YouMail, https://robocallindex.com/ (last visited Mar. 14, 2018).

## V. FACTUAL ALLEGATIONS

### A. Mr. Perrong

27. Mr. Perrong owns the phone number (215) 757-0689. All calls to Mr. Perrong alleged herein were to that number, while he owned it.

28. The number has been on the National Do Not Call Registry since 2003.

29. Mr. Perrong is charged at a rate of $0.009 per minute for incoming calls.

30. Mr. Perrong never consented to be called by Macy's.

31. Mr. Perrong doesn't own and never did own a Macy's credit card.

32. Mr. Perrong doesn't owe and has never owed money to Macy's.

### B. Macy's

33. Macy's is a department store chain that issues private label credit cards.

34. Macy's places calls with prerecorded voices to collect debts incurred by its cardholders.

35. Macy's calls to Mr. Perrong bore the caller ID (877) 268-6095. This number has been the subject of over twenty online complaints on online forums, and the subject of a number of FTC Do-Not-Call complaints.

**C. Macy's's Illegal, Nonconsensual, Nonemergency, Prerecorded Robocalls to Mr. Perrong**

36. The First Illegal, Nonconsensual, Prerecorded Robocall: On December 4, 2017, Macy's placed a prerecorded robocall to Mr. Perrong without his prior express consent.

37. The Second Illegal, Nonconsensual, Prerecorded Robocall: On December 4, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

38. The Third Illegal, Nonconsensual, Prerecorded Robocall: On December 4, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

39. The Fourth Illegal, Nonconsensual, Prerecorded Robocall: On December 5, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

40. The Fifth Illegal, Nonconsensual, Prerecorded Robocall: On December 5, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

41. The Sixth Illegal, Nonconsensual, Prerecorded Robocall: On December 5, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

42. The Seventh Illegal, Nonconsensual, Prerecorded Robocall: On December 6, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

43. The Eighth Illegal, Nonconsensual, Prerecorded Robocall: On December 6, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

44. The Ninth Illegal, Nonconsensual, Prerecorded Robocall: On December 6, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

45. The Tenth Illegal, Nonconsensual, Prerecorded Robocall: On December 7, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

46. The Eleventh Illegal, Nonconsensual, Prerecorded Robocall: On December 7, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

47. The Twelfth Illegal, Nonconsensual, Prerecorded Robocall: On December 7, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

48. The Thirteenth Illegal, Nonconsensual, Prerecorded Robocall: On December 8, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

49. The Fourteenth Illegal, Nonconsensual, Prerecorded Robocall: On December 8, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

50. The Fifteenth Illegal, Nonconsensual, Prerecorded Robocall: On December 8, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

51. The Sixteenth Illegal, Nonconsensual, Prerecorded Robocall: On December 9, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

52. The Seventeenth Illegal, Nonconsensual, Prerecorded Robocall: On December 9, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

53. The Eighteenth Illegal, Nonconsensual, Prerecorded Robocall: On December 9, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

54. The Nineteenth Illegal, Nonconsensual, Prerecorded Robocall: On December 10, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

55. The Twentieth Illegal, Nonconsensual, Prerecorded Robocall: On December 10, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

56. The Twenty-First Illegal, Nonconsensual, Prerecorded Robocall: On December 10, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

57. The Twenty-Second Illegal, Nonconsensual, Prerecorded Robocall: On December 11, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

58. The Twenty-Third Illegal, Nonconsensual, Prerecorded Robocall: On December 11, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

59. The Twenty-Fourth Illegal, Nonconsensual, Prerecorded Robocall: On December 11, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

60. The Twenty-Fifth Illegal, Nonconsensual, Prerecorded Robocall: On December 12, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

61. The Twenty-Sixth Illegal, Nonconsensual, Prerecorded Robocall: On December 12, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

62. The Twenty-Seventy Illegal, Nonconsensual, Prerecorded Robocall: On December 12, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

63. The Twenty-Eighth Illegal, Nonconsensual, Prerecorded Robocall: On December 13, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

64. The Twenty-Ninth Illegal, Nonconsensual, Prerecorded Robocall: On December 13, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

65. The Thirtieth Illegal, Nonconsensual, Prerecorded Robocall: On December 13, 2017, Macy's placed yet another a prerecorded robocall to Mr. Perrong without his prior express consent.

66. During several of the calls, Mr. Perrong stated that he was not the person Macy's claimed to be trying to reach.

67. During several of the calls, Mr. Perrong asked Macy's to stop calling him, but it kept calling.

68. Macy's repeatedly engaged Mr. Perrong and his telephone, three times a day, in an effort to annoy, abuse, and/or harass Mr. Perrong at the called number.

69. The calls were annoying.

70. The calls were harassing.

71. The calls were a nuisance.

## VI. CLASS ACTION ALLEGATIONS

72. Class Definition: Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Mr. Perrong brings this case on behalf of a class (the "Class") defined as follows: All persons to whom:

a. Macy's and/or a third party acting on its behalf made one or more non-emergency telephone calls;

b. at a cellular telephone number or number for which the called party is charged for the call;

c. using an artificial or prerecorded voice;

d. purporting or attempting to collect a debt;

e. which called parties had never had a Macy's credit card;

f. at any time in the period that begins on the date four years before the filing of the original complaint in this case and ends at the date of trial.

Excluded from the Class are Macy's, any entity in which Macy's has a controlling interest or that has a controlling interest in Macy's, and Macy's's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

73. Numerosity: The Class is so numerous that joinder of all its members is impracticable. On information and belief, the Class has more than 100 members. Over twenty complaints that have been posted online about the telephone number Macy's uses, (877) 268-6095, even though only a tiny fraction of people wrongly called by a given phone number post a report about the call and phone number online. Moreover, many FTC Do-Not-Call complaints have been lodged against this number.

74. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

75. Commonality: There are many questions of law and fact common to Mr. Perrong and members of the Class. Indeed, the very feature that makes Macy's conduct so annoying—its automated nature—makes this dispute amenable to classwide resolution. These common questions of law and fact include, but are not limited to, the following:

a. What the corporate relationships between and among Defendants are;

b. Whether Macy's makes debt collection calls (or, instead, was impersonated by a scammer);

c. Whether Macy's uses a prerecorded voice in its collection calls (or, instead, a live person who acts and sounds robotic);

d. Whether Macy's's desire to collect monies purportedly owed to it constitutes an "emergency" within the meaning of the TCPA;

e. Whether, under FCC regulations, merely owning a phone number that was once owned by someone who owed something to Macy's constitutes express consent to be robocalled by Macy's;

f. Whether Macy's violations were knowing or willful, in light of its continued use of prerecorded collections robocalls despite its awareness, from previously filed lawsuits, of its alleged TCPA violations; and

g. Whether, in light of the availability of databases offering number-assignment updates every 15 minutes from over 250 sources, Macy's should be enjoined from placing prerecorded collections robocalls to people who have never borrowed from it.

76. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims and those of the Class arise out of the same course of conduct by Macy's and are based on the same legal and remedial theories.

77. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable counsel with experience in TCPA class action litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have interests contrary to or conflicting with those of the proposed Class.

78. Predominance: Macy's has engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Class resolution

will not be impeded by individualized issues of consent, because the Class definition limits the Class to only those people who never took out a Macy's credit card in the first place. Nor, even if Macy's used different systems for some calls than for others, will the Court need to resolve individualized issues of whether a given call was placed by an autodialer, because the Class definition is limited to those people who received calls using an artificial or prerecorded voice. Adjudication of these common issues in a single action has important and desirable advantages, including judicial economy.

79. Superiority: A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Macy's to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Macy's is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are all automated and because the TCPA articulates bright-line standards for liability and damages. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

80. Injunctive and Declaratory Relief is Appropriate: Macy's has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis. Moreover, Macy's has been the subject of a previous class action with a similar set of circumstances but continues to violate the TCPA. Therefore, an injunction is necessary to ensure that Macy's ceases once and for all its debt-collection practice of illegal robocalling.

## VII. FIRST CLAIM FOR RELIEF
**(Nonemergency, Nonconsensual, Prerecorded Robocalls, 47 U.S.C. § 227(b)(1)(A))**
**On Behalf of Mr. Perrong and the Class**
**Against All Defendants**

81. Mr. Perrong realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

82. The foregoing acts and omissions of Macy's and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1), by making nonemergency, prerecorded calls to cellular telephone numbers and numbers for which the called party is charged for the call without the prior express consent of the called party.

83. Mr. Perrong and Class members are entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

84. Mr. Perrong, on behalf of himself and the Class, also seeks a permanent injunction prohibiting Macy's and its affiliates and agents from making non-emergency prerecorded collections calls to people who have not borrowed any money from it.

## VIII. SECOND CLAIM FOR RELIEF
**(Knowing or Willful, Nonemergency, Nonconsensual, Prerecorded Robocalls, 47 U.S.C. § 227(b)(1)(A))**
**On Behalf of Mr. Perrong and the Class**
**Against All Defendants**

85. Mr. Perrong realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

86. The foregoing acts and omissions of Macy's and/or its affiliates or agents constitute multiple knowing or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making nonemergency, prerecorded calls to cellular telephone numbers and numbers for which the called party is charged for the call without the prior express consent of the called party.

87. In the span of its 30 prerecorded calls to Mr. Perrong, Macy's didn't *once* place a call by a living, breathing person to see whether it was reaching the right person.

88. Macy's automated calling system implied it had the capacity to understand what the called party said, but even after he repeatedly and unambiguously stated that he was not the

intended party for the call and would like Macy's to please stop calling him, Macy's kept up the full-court press.

89. Commercial databases are publicly advertised offering number-assignment updates every 15 minutes from over 250 sources.

90. Even if Mr. Perrong *had* borrowed money from Macy's (which he did not), placing three prerecorded collections calls to him every single day for 10 days straight, like clockwork at the breakfast, lunch and dinner hour, would have been annoying, abusive, and harassing.

91. Thus, Mr. Perrong and Class members are entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

## IX. PRAYER FOR RELIEF

WHEREFORE, Mr. Perrong prays for judgment against Macy's as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. Certification of the proposed Class;

C. A declaration that actions complained of herein by Macy's violate the TCPA;

D. An order enjoining Macy's and its affiliates and agents from engaging in the unlawful conduct set forth herein;

E. An award to each Class member of $1,500 in statutory damages for each knowing or willful violation of the TCPA;

F. An award to each Class member of $500 in statutory damages for each other violation of the TCPA;

G. An award to Mr. Perrong and the Class of interest, costs and attorneys' fees, as allowed by law or equity; and

H. Such further relief as the Court deems necessary, just, and proper.

## X. DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 29th day of March, 2018.

By: /s/ Clayton S. Morrow
Clayton S. Morrow (PA I.D. 53521)
Email: csm@ConsumerLaw365.com
Morrow & Artim, PC
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
Telephone: (412) 209-0656

Jon B. Fougner (CA State Bar No. 314097)
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
San Francisco, CA 94108
Telephone: (434) 623-2843
Facsimile: (206) 338-0783
*Pro Hac Vice Application Forthcoming*

*Attorneys for the Plaintiffs*