**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW PERRONG, | |
| Plaintiff, | CIVIL ACTION NO. 18-1382 |
| v. | |
| MACY'S INC., DEPARTMENT STORES NATIONAL BANK, FDS BANK, and MACY'S CREDIT AND CUSTOMER SERVICES, INC., | |
| Defendants. | |

**DEFENDANT DEPARTMENT STORES NATIONAL BANK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR STRIKE PLAINTIFF'S CLASS CLAIMS FROM THE COMPLAINT**

Defendant Department Stores National Bank ("DSNB"), wrongfully identified as Macy's Inc., Department Stores National Bank, FDS Bank, and Macy's Credit and Customer Services, Inc., through counsel and under Federal Rules of Civil Procedure ("Rules") 12(b)(1), 12(b)(6), 12(f) and 23, hereby moves to dismiss the Complaint filed by Plaintiff Andrew Perrong ("Perrong"), or, alternatively, to strike the class claims.

## I. INTRODUCTION

Claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, are now the second most filed lawsuits in the country.[1] The statute, designed to minimize unsolicited telemarketing calls, has been weaponized by individuals willing to manufacture claims in hopes of receiving a windfall under the statute.

Courts have understandably grown tired of these tactics, and have refused to allow such claims to advance. *See, e.g.*, *Phan v. Convergent Outsourcing, Inc.*, No. 14-84-J-25

---

[1] *See generally* webrecon.com.

JBT, 2015 U.S. Dist. LEXIS 183620, at *10–11 (M.D. Fl. Mar. 27, 2015) (ordering plaintiff to pay defense counsel fees as a sanction for fabricating evidence to support TCPA claim); *Johansen v. Modernize, Inc.*, No. 16-839, 2017 U.S. Dist. LEXIS 37979, at *4–5 (S.D. Ohio Mar. 15, 2017) (holding that degree to which "professional plaintiff" carries on to "invite engagements" with telemarketers vitiates standing for TCPA claims); *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016) (holding professional plaintiff lacks standing to bring TCPA claims).

This abuse has also caught the attention of Congress.  As House Judiciary Committee Chairman Bob Goodlatte explained at a June 13, 2017 hearing "TCPA litigation is arising from a lack of clarity in the law's application, which is being exploited by attorney's seeking big payouts" resulting in "a 1,372% increase in case filings" against "U.S. businesses that are not actually violating the law."[2]  Even Commissioner Ajit Pai of the Federal Communication Commission, which is empowered to regulate the TCPA, acknowledged that "[t]he TCPA has become the poster child for lawsuit abuse."[3]

This case is an example of such abuse.

It appears Plaintiff Andrew Perrong is running a business.[4]  Over the last 14 months, Perrong has filed ten TCPA lawsuits in this District alone (he has filed three others in

---

[2]     *See* https://judiciary.house.gov/press-release/goodlatte-statement-hearing-lawsuit-abuse-telephone-consumer-protection-act/.

[3]     30 F.C.C. Rcd. 7961 (2015) (Pai dissent).

[4]     Throughout this Motion, Defendants will rely on the Complaint, its Exhibits, and matters of public record, as well as authentic documents upon which Perrong's claims are based, all of which are properly considered on a motion to dismiss.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding these documents are properly considered when evaluating a motion under 12(b)(6)); *Dahn v. Hart*, No. 17-3591, 2018 U.S. Dist. LEXIS 44137, at *4–5 (E.D. Pa. Mar. 19, 2018) (same).  The court may also consider evidence beyond the pleadings when deciding whether a plaintiff has

other districts).[5]  All of these suits, except one, have settled quickly.  Every Complaint alleges

that the defendant placed unauthorized calls to a number Perrong allegedly owns, and almost

every Complaint lists a different phone number.[6]  This streak of suits, each one turning "calls

into cash," demonstrates that Perrong has no injury-in-fact and is not within the class of persons

the TCPA is designed to protect.  This Court should thus find that he lacks standing to continue

to bring such suits.

        Further, while it may appear at first blush that this suit is typical of his cookie-

cutter TCPA claim, it is not.  This suit is Perrong's boldest attempt for two reasons.  First,

Perrong alleges he owns 215-757-0689.  However, search of public records indicates that the

number is owned by Macy's cardholders Jennifer and Robert Dailey.[7]  Second, the payday he

seeks in this suit goes much further than in his others.  Based on an alleged thirty calls, <u>and no</u>

---

standing.  *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000);
*Raynor v. Verizon Wireless, VAW, LLC*, No. 15-5914, 2016 U.S. Dist. LEXIS 54678, at
*2 n.1 (D.N.J. Apr. 25, 2016) (citing *Ballentine v. United States*, 486 F.3d 806, 810 (3d
Cir. 2007)).

[5]     *See Perrong v. Choice Energy, LLC*, No. 18-00626 (filed Feb. 12, 2018); *Perrong v.
Penn Foster Education Group, Inc.*, No. 17-05816 (filed Dec. 26, 2017); *Perrong v.
HBW Leads LLC*, No. 17-05442 (filed Dec. 4, 2017); *Perrong v. William Novick Agency,
LLC*, No. 17-4172 (filed Sept. 19, 2017); *Perrong v. Tranzvia*, LLC, No. 17-03664 (filed
Aug. 14, 2017); *Perrong v. Sussman, Inc.*, No. 17-03511 (filed Aug. 8, 2017); *Perrong v.
Lednor Corp.*, No. 17-03452 (filed Aug. 2, 2017); *Perrong v. Smith*, No. 17-03366 (filed
July 27, 2017); *Perrong v. Elite Chimney Solutions Inc*, No. 17-01512 (filed Apr. 3,
2017).

[6]     Perrong has alleged he has received calls that violate the TCPA at least eight different
phone numbers.  It is impossible to discern any reason for a single person to require eight
different personal phone numbers, unless, of course, they are seeking out such calls.  *See,
e.g.*, *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 796–806 (W.D. Pa. 2016)
(holding plaintiff who purchased many cell phones to run a "business" of filing TCPA
lawsuits lacks constitutional and prudential standing because she suffers no injury-in-fact
and lies outside the zone of interests of the TCPA).

[7]     The results of the public records searches are attached as Exhibit A.

other facts, Perrong seeks to leverage the threat of a class action by purporting to represent a nationwide group of individuals who purportedly received a prerecorded call from DSNB over the last four years.  But Perrong's class claims are not plausible and should be rejected. Perrong's class claims should also be stricken because he has pled an improper fail-safe class and individualized issues render class treatment improper.

Simply stated, DSNB should not be forced to endure months of extensive, burdensome discovery defending improper class claims advanced by a repeat litigant outside of the intended scope of the TCPA's protection.  Rather, the futile class claims should be stricken now.  Accordingly, DSNB respectfully requests that this Court dismiss or strike the class allegations.

## II.    STATEMENT OF FACTS

Perrong alleges that between December 4 and December 13, 2017, DSNB placed thirty calls to 215-757-0689 with prerecorded or artificial voices without his prior express consent.  Compl. ¶ 36–65.  Based on these alleged thirty calls, his claim that he "owns" that number, and his "information and belief" that others have received similar calls without consent, Perrong seeks to represent a class of all persons to whom:

> (a) Macy's and/or a third-party acting on its behalf made one or more non-emergency telephone calls; (b) at a cellular telephone number or number for which the called party is charged for the call; (c) using an artificial or prerecorded voice; (d) purporting or attempting to collect a debt; (e) which called parties had never had a Macy's credit card; (f) at any time in the period that begin on the date four years before the filing of the original complaint in this case and ends at the date of trial.

Compl. ¶ 72.

4

### III.    LEGAL STANDARD

**A.    Motion to Dismiss under 12(b)(1)**

A motion to dismiss for lack of standing is properly brought under 12(b)(1), as standing is a jurisdictional matter. *Ballentine v. United States*, No. 1999-130, 2006 U.S. Dist. LEXIS 96631, at *3 (D.V.I. Sept. 21, 2006), *aff'd and adopted by*, 486 F.3d 806 (3d Cir. 2007). To establish standing, the plaintiff must show: 1) an "injury-in-fact" which is concrete and particularized, as well as actual or imminent; 2) that the conduct complained of is "fairly traceable" to the defendant; and 3) that the injury is "likely redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Further, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). The burden of proof is on the plaintiff to show all elements of standing and "'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan*, 504 U.S. at 561).

**B.    Motion To Dismiss under 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss a plaintiff's claims for "failure to state a claim upon which relief can be granted." The Supreme Court has established a two-step process for determining whether a plaintiff has pled sufficient facts to overcome a motion to dismiss. First, the Court must ignore "mere conclusory statements" or legal conclusions, which are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Thus, "a complaint must contain sufficient factual matter . . . to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). *See Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009) (explaining that "[a]lthough a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently 'permit the court to infer more than the mere possibility of misconduct.'") (citation omitted).

## C.     Motion To Strike

The Supreme Court has recognized that filing a motion to strike before the plaintiff has moved to certify the class – or even before discovery – is proper where "the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim." *Gen'l Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

Accordingly, federal courts—including this one—have recognized that it is appropriate to strike class allegations under Rules 12(f), 23(C)(1)(A), and 23(d)(1)(D) "as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23." *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *Durso v. Samsung Elecs. Am., Inc.*, No. 2:12-cv-05352, 2013 U.S. Dist. LEXIS 160596, at *9 (D.N.J. Nov. 6, 2013) (motion to strike class allegations is properly filed before discovery commences "where the complaint itself demonstrates that that requirements for maintaining a class action cannot be met.") (citing *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 93 n.30 (3d Cir. 2011)); *McPeak v. S-L Distribution Co., No.*, 12-348 (RBK/KMW), 2014 U.S. Dist. LEXIS 123728, at *9 (D.N.J. Sep. 5, 2014) ("When no amount of discovery or time will allow for plaintiffs to

resolve deficiencies in class definitions under Rule 23, [ ] a motion to strike class allegations

should be granted.") (citing *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir.

2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a

district court may dismiss the class allegation on the pleadings"); *see also Luppe v. Cheswick*

*Generating Station*, No. 12-cv-929, 2015 U.S. Dist. LEXIS 9791, at *4-5 (W.D. Pa. Jan. 28,

2015) (striking class allegations at the pleading stage pursuant to Rules 12(f), 23(C)(1)(A), and

23(d)(1)(D)); *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 368 (D.N.J. 2015)

(same).

## IV.  ARGUMENT

Perrong's business of bringing TCPA lawsuits deprives him of standing to bring

such cases, as he has no injury and falls outside the zone of interests of the TCPA.  For this

reason, his Complaint should be dismissed.  Alternatively, this Court should dismiss or strike the

class allegations from the Complaint for three reasons.  First, Perrong's class is fail-safe and not

ascertainable under Rule 23.  Second, Perrong cannot avoid the well-recognized individualized

issues of consent.  Third, Perrong's Complaint is devoid of any facts to support his class-wide

allegation, and therefore, does not plausibly state class-wide allegations.

### A.    Perrong lacks standing to bring this TCPA case.

"In essence the question of standing is whether the litigant is entitled to have the

court decide the merits or the dispute or particular issues."  *Allen v. Wright*, 468 U.S. 737 (1984).

Perrong's litigation history suggests he lays traps to receive calls in hopes of creating TCPA

claims.  His litigation experience means he cannot satisfy Article III's injury-in-fact requirement

and the dispute he alleges falls outside the zone of interests of the TCPA.  His complaint should

therefore be dismissed.

At least two courts in the Third Circuit have found that the harm alleged by plaintiffs must fall within the zone of interest of the TCPA or they lack standing to bring such a claim. *See, e.g.*, *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 796–806 (W.D. Pa. 2016) (no standing for repeat TCPA litigant); *see also Zemel v. CSC Holdings LLC*, No. 16-4064-BRM-DEA, 2017 U.S. Dist. LEXIS 63398, at *10–15 (D.N.J. Apr. 16, 2017) (no standing because plaintiff's conclusory allegations of harm were insufficient as a matter of law to constitute injury-in-fact and that Congress did not intend to prevent the "harm" he alleged).

       *Stoops* and *Zemel* reflect the reality recognized by Congress and the FCC that the TCPA is being abused. And the cases are not outliers—other district courts across the country have held similarly. *See, e.g.*, *Johansen v. Modernize, Inc.*, No. 16-839, 2017 U.S. Dist. LEXIS 37979, at *4–5 (S.D. Ohio Mar. 15, 2017) (holding that degree to which "professional plaintiff" carries on to "invite engagements" with telemarketers vitiates standing for TCPA claims); *Jones v. Revenue Assistance Corp.*, No. 14-10218, 2016 U.S. Dist. LEXIS 136993, at *16–17 (D. Mass. Aug. 31, 2016) (casting doubt on whether plaintiff, who filed TCPA suits as his source of income, suffered an injury-in-fact on the basis of invasion of his privacy).

       In *Stoops*, plaintiff purchased several cell phones with reassigned phone numbers for the sole purpose of claiming that each subsequent call violated the TCPA. 197 F. Supp. 3d at 788. She filed at least eleven TCPA lawsuits in the Western District of Pennsylvania, as well as other suits outside the jurisdiction. *Id.* Defendants argued that, by virtue of her litigation history and experience of manufacturing TCPA suits, plaintiff lacked constitutional standing because she had no injury-in-fact. *Id.* at 795–96.

       The court agreed that plaintiff had no Article III standing. *Id.* at 806. Specifically, it found her privacy rights were not violated when she received the calls and she

8

suffered no economic injury based on the calls. *Id.* at 796–806. The court determined that the calls were not a nuisance, not invasion of privacy, and not unwanted because plaintiff sought the calls in order to file lawsuits. *Id.* at 800. The court further determined the plaintiff could not "manufacture standing" by choosing to spend her money with hopes of being called in violation of the TCPA. *Id.* at 801–02 (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (A plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending.")).

The *Stoops* court further held that plaintiff lacked prudential standing. 197 F. Supp. 3d at 804–05. Specifically, Plaintiff's interests of maintaining "phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages," fell outside the zone of interests the statute sought to protect. *Id.* at 805. It stated "it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA." *Id.*; *see also Cellco P'ship v. Wilcreast Health Care Mgmt.*, No. 09-3534 (MLC), 2012 U.S. Dist. LEXIS 64407, at *25 (D.N.J. May 8, 2012) ("The TCPA, as noted above, anticipates damages on an individual basis because the contemplated plaintiff is an individual natural persons or business <u>with a limited number of phone lines</u>.") (emphasis added).

The facts in *Stoops* are strikingly similar to those before this Court. Based on the allegations made in his multiple TCPA lawsuits, Perrong claims to own at least eight phone numbers. Each number appears to be reassigned as Perrong claims in each lawsuit that he received calls without his consent—the defendants were trying to reach someone else. Perrong has filed ten TCPA lawsuits in the Eastern District over the last 14 months with these or similar allegations. It appears he, likes Stoops, is obtaining reassigned phone numbers, seeking calls, and then suing for TCPA violations. Thus, just like Stoops, Perrong lacks standing.

The alleged calls Perrong received are hardly unwanted or intrusive—his litigation history makes plain that he was trying to receive them.  There is no other way to view Perrong's excessive number of phone lines and corresponding litigation history as anything other than the setting of traps for corporations seeking to recoup consumers' debts.  The purpose of such conduct is to make Perrong money through TCPA claims.  It is Constitutionally impermissible to create standing in such a manner.  *Clapper*, 133 S. Ct. at 1143.  Similarly, prudential standing is lacking, because Perrong's motivation is his own economic self-interest, and therefore, he falls outside the zone of interests Congress sought to protect through passage of the TCPA.

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Spokeo*, 136 S. Ct. at 1548.  Here, Perrong has no concrete injury—the calls that he alleges harmed him are, in fact, the point of his apparent business.  As Perrong lacks an injury-in-fact and alleges "harm" that is outside the zone of Congressional intent, he has no Article III or prudential standing.  As such, the Complaint should be dismissed in its entirety.

**B.      The class allegations should be dismissed or stricken because Perrong proposes a fail-safe class.**

If the Court finds that Perrong has standing (or appears to have standing at this point) to bring claims under the TCPA, he cannot pursue his claims on a class-wide basis.[8] Before reaching the factors under Rule 23, the court must determine an "essential prerequisite" for a class—ascertainability.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2011). The ascertainability inquiry requires demonstration that the proposed class is "defined with reference to objective criteria" and that there is "a reliable and administratively feasible

---

[8]      If the Court finds that Perrong appears to have standing, DSNB requests that it be granted leave to conduct limited discovery into the above issues and renew its motion before full discovery is permitted.

mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

      As Courts in this district have repeatedly explained, it is "'necessary to arrive at a [class definition] that is precise, objective, and presently ascertainable.'" *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 221 (E.D. Pa. 2001) (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.14 (3d ed. 1995)). "If such ascertainability is not met based on objective criteria, the class definition must fail." *Zarichny v. Complete Payment Recovery Services, Inc.*, 80 F. Supp. 3d 610, 625 (E.D. Pa. 2015).

      A fail-safe class fails to satisfy Rule 23's ascertainability requirement because it is defined by the defendant's liability. "A fail-safe class is 'one that is defined so that whether a person qualifies as a member depend on whether the person has a valid claim." *Zarichny*, 80 F. Supp. 3d at 623 (citing *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). Such a definition "front-loads" the proceedings, "requiring the court reach the merits of the case at the class certification stage, contrary to law and policy." *Luppe v. Cheswick Generating Station*, No. 12-929, 2015 U.S. Dist. LEXIS 9791, at *11–12 (W.D. Pa. Jan. 28, 2015) (granting motion to strike class allegations due to fail-safe class). As one commentator has observed, allowing a fail-safe class to proceed "creates a 'heads I win, tails you lose,' situation, where class members either receive a favorable judgment or are defined out of the class." *Hurt v. Shelby County Bd. of Educ.*, No. 13-230, 2014 U.S. Dist. LEXIS 116941, at *19 (quoting Erin L. Geller, *The Fail-Safe Class As an Independent Bar to Class Certification*, 81 FORDHAM L. REV. 2769, 2771 (2013)). "This scenario is patently unfair to the defendant." *Id.*

      Here, Perrong proposes an improper fail-safe class. Perrong alleges that the TCPA was violated when: (a) DSNB made a non-emergency call to him that he was charged for;

(b) on a phone he owned; (c) consisting of a prerecorded message; (d) solely to collect a debt; (e) and that DSNB did not have his consent because he was not a Macy's cardholder. *See, e.g.*, Compl. ¶ 1. Perrong defines the proposed class to include "All persons to whom (a) [DSNB] made one or more non-emergency telephone calls; (b) at a cellular telephone number or number for which the called party is charged for the call; (c) using an artificial or prerecorded voice; (d) purporting or attempting to collect a debt; (e) which called parties had never had a Macy's credit card; (f) at any time in the period that begins on the date four years before the filing of the original complaint and ends at the date of trial." Compl. ¶ 72.

Perrong's proposed class tracks almost verbatim the elements he claims are necessary to prove liability.[9] Thus, whether a person qualifies as a member of the proposed class depends upon whether the person also has a valid claim under Perrong's theory—the very definition of an improper fail-safe class. Courts in this Circuit routinely refuse to consider such improper fail-safe classes, including in the TCPA context definitions. *See, e.g.*, *Martinez v. TD Bank USA, N.A.*, No. 15-7712, 2017 U.S. Dist. LEXIS 101979, at *33–35 (D.N.J. June 30, 2017) (striking class allegations in TCPA case where class was defined by terms of Defendants' liability to the proposed class); *Luppe v. Cheswick Generating Station*, No. 12-929, 2015 U.S. Dist. LEXIS 9791, at *10–11 (W.D. Pa. Jan. 28, 2015) (finding fail-safe class was unascertainable and striking class allegations); *Zarichny v. Complete Payment Recovery Services, Inc.*, 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015) (granting motion to strike class allegations in TCPA case "because plaintiff's class definitions create impermissible fail-safe classes"); *Jackson v. SEPTA*, 260 F.R.D. 168, 182 (E.D. Pa. 2009) ("Where a proposed class

---

[9]    Perrong also defined his class around the applicable 4-year statute of limitation. 28 U.S.C. § 1658.

required the court to address 'the central issue of liability' in the case, the class definition may be untenable.").

The same conclusion is reached by other district courts. *See, e.g.*, *Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2016 U.S. Dist. LEXIS 142259, at *26-27 (N.D. Ill. Oct. 14, 2016) (holding that plaintiff proposed an impermissible fail-safe TCPA class when membership required "a determination of consent – i.e., whether the called party's number was 'volunteered' or 'verified' before [Defendant] used it"); *Taylor v. Universal Auto Group I, Inc.*, No. 3:13-cv-05245KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) (denying motion for class certification in TCPA class action because "inclusion of the 'without prior consent' language in the national class definition makes it a 'failsafe' class, as clearly the issue of consent is central to determining defendant's liability"); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *4-9 (S.D. Ohio May 7, 2014) (reviewing cases addressing whether proposed TCPA classes defined to include individuals who did not provide prior express consent qualified as fail-safe classes and finding that such classes are impermissible).[10]

In *Zarichny*, the plaintiff alleged that the defendant used an ATDS to place debt collection calls to her cellular telephone without her prior express consent.  80 F. Supp. 3d at 616.  Plaintiff sought to bring a TCPA class "on behalf of those people 'who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system' without prior content [sic]."  *Id.* at 623 (internal citations omitted).

---

[10]    *See also Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298, 2016 U.S. Dist. LEXIS 82601, at *13-14 (N.D. Cal. June 24, 2016); *Conigliaro v. Norwegian Cruise Line*, No. 05-cv-21584, 2006 U.S. Dist. LEXIS 95576, at *13 (S.D. Fla. Aug. 31, 2006) ("Definitions, particularly under [Fed. R. Civ. P. 23](b)(3), should avoid criteria . . . that depend on the merits").

The plaintiff argued the court "should not strike her class allegations because 'the class definition can be revised' through the course of the litigation." *Id.* (internal citations omitted).  Plaintiff further argued that "a ruling on class certification is premature when a plaintiff has filed neither a motion for class certification nor conducted any discovery." *Id.* (internal citations omitted).  The court disagreed explaining:

> Both classes [Plaintiff] defined are fail-safe classes.  The putative TCPA class is comprised of those people who received [defendant's] telephone calls without the recipient's 'prior express consent,' 47 U.S.C. § 227(b)(1)(A)(iii).  Since we are at the outset of this litigation, there is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should avoid.  Similarly, at the conclusion of the litigation, should [defendant] prevail against [Plaintiff], any other putative class recipient would be free to litigate the same claim against [defendant]. . . . Therefore, we will strike [Plaintiff's] class allegations from her lawsuit.

*Id.* at 625-26; *see also Martinez*, 2017 U.S. Dist. LEXIS 101979, at *31–35 (striking fail-safe class allegations for same reasons as *Zarichny*).

Like in *Zarichny*, Perrong should be prohibited from pursuing (and leveraging for settlement claims) costly class discovery in a futile attempt to identify members of an improper fail-safe class.  Accordingly, Perrong's purported class claims should be dismissed or stricken.

## C.   The class allegations should be dismissed or stricken because individualized issues render class treatment improper.

The Complaint also makes clear that class treatment is improper due to numerous individualized issues, including whether any particular consumer gave or subsequently revoked consent.  *See, e.g.*, *Balthazor v. Cent. Credit Servs., Inc.*, No. 10-cv-62435, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012) ("Resolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone"); *Hicks v. Client Servs., Inc.*, No. 07-CIV-61822,

2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) (holding certification on a TCPA claim was improper because the issue of consent would have to be determined on an individual basis at trial); *Pepka v. Kohl's Department Stores, Inc.*, No. 16-cv-4293, 2016 U.S. Dist. LEXIS 186402, at *9-10 (C.D. Cal. Dec. 21, 2016) (striking class allegations at the pleading stage because "no matter what that discovery might show, the fact remains plaintiffs' allegations require an individualized inquiry into questions" of consent).

"If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2011).

"Prior express consent is a complete defense" to a claim under the TCPA. *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1107 (N.D. Cal. 2015). DSNB has the right to examine each of the class members claims to determine whether consent was given regardless of whether or not that individual has a Macy's credit card. *See, e.g., Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272–73 (3d Cir. 2013) (holding that there is no temporal limitation on consent under TCPA—it can be freely given and freely withdrawn at any time).

Perrong cannot avoid this obvious failure of his class claims by baldly claiming that consent is not an issue because the class includes only "parties [that] never had a Macy's credit card," Compl. ¶ 72, because consent is not tied to ownership of a credit card. Indeed, Perrong implicitly acknowledges consent can be given in a variety of forms, and not just by signing up for a Macy's credit card. *See, e.g.*, Compl. ¶¶ 30, 31 (first, stating "Mr. Perrong never consented to be called by Macy's," ¶ 30, and then, "Mr. Perrong doesn't own and never did own a Macy's card," ¶ 31).

Even if persons in the class did not have a Macy's card, they could have given consent to be contacted in multiple ways. *See, e.g.*, *Osorio v. State Farm Nank, F.S.B.*, 746 F.3d 1242, (11th Cir. 2014) (agent acting for principal can give consent); *Jordan v. Sterling Jewelers, Inc.*, No. 15-CV-1417, 2016 U.S. Dist. LEXIS, at *12 (W.D. Pa. Nov. 16, 2016) (voluntary provision of phone number constitutes consent); *Target Nat'l Bank v. Welch*, No. 15-614-T-36, 2016 U.S. Dist. LEXIS 38635, at *12–13 (M.D. Fl. Mar. 24, 2016) (spousal consent).

Thus, Perrong's purported class requires that issues of consent be delved into for every single member of the class.  Because this is an inherently individualized inquiry, class treatment is inappropriate and the class allegations in the Complaint should be dismissed or stricken.

**D.**     **The class claims should be dismissed or stricken because Perrong has not plead any facts supporting his class allegations.**

Perrong has also failed to allege a single fact supporting his class allegations. Instead, the entire basis for his class claims is that he allegedly received thirty prerecorded calls from DSNB over a nine-day period and his "information and belief" that other individuals received similar calls despite not providing their consent.  This plainly does not satisfy the requirements of Rule 8, particularly in the context of a putative nationwide class action.  "[A] complaint must contain sufficient factual matter . . . to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 570).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

Further, this Circuit has elaborated on Rule 8, stating it requires "a 'showing' rather than a blanket assertion of an entitlement to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  This showing must include actual facts, otherwise the grounds on

which the claims rest are unknown.  *Id.* (citing *Twombly*, 550 U.S. at 555 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests.").

This is in accord with other Circuits, which have similarly refused to consider assertions based solely "upon information and belief."  *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (holding that plaintiff had "not alleged enough facts" to move his claim "from conceivable to plausible" because "we do not have to take as true Mann's allegations 'upon information and belief'") (citing *Twombly*, 550 U.S. 544, 551, 557 (2007)); *Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (refusing to consider allegation that other individuals were subjected to the same treatment as the plaintiff because "[w]e do not discuss that allegation because, for purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief'").

At least one district court has dismissed the class claims in a TCPA case for this very reason.  *See, e.g.*, *Daisy, Inc. v. Pollo Operations, Inc.*, No. 14-564-FtM-38CM, 2015 U.S. Dist. LEXIS 39265, at *13 (M.D. Fl. Mar. 27, 2015) (dismissing class claims where plaintiff merely recited "the elements of a class action and stat[ed] it **believes** forty (40) other businesses received the same facsimiles it received."). The *Daisy* court found such pleading insufficient because "Plaintiff does not provide the Court with any factual basis other than a speculation based upon the Plaintiff's information and belief that some forty other businesses also received the alleged facsimiles in violation of the TCPA."  *Id.* at *14.  Thus, the court held that "[t]he Plaintiff has not pled a sufficient factual basis to support a plausible Rule 23 class action claim at this point in the proceedings."  *Id.*

Like the plaintiff in *Daisy*, all of Perrong's class allegations rely solely on speculation. Specifically, he alleges that "on information and belief, the Class has more than 100 members." Compl. ¶ 73.[11] And while he states that "twenty complaints [ ] have been posted online" about Defendants calling other people, Compl. ¶ 73, he provides no details of those complaints and instead speculates that these unverified, unidentified "online complaints" relate to phone calls made DSNB without consent and that these purported calls bring the alleged complainants within Perrong's class definition.

In the face of no factual support indicating that anyone other than Perrong belongs to the class, he has not and cannot plausibly allege class claims. Those claims should therefore be dismissed or stricken.

## V.   CONCLUSION

For the foregoing reasons, DSNB respectfully requests this Court grant its motion to dismiss or strike the class claims from the Complaint.

Respectfully submitted,

DATED:  May 14, 2018

*/s/ Daniel JT McKenna*
Daniel JT McKenna, Esq. (Pa. I.D. 93930)
mckennad@ballardspahr.com
Jenny N. Perkins, Esq. (Pa. I.D. 306498)
perkinsj@ballardspahr.com
Wesley S. Stevenson (Pa. I.D. 324269)
stevensonw@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
T: 215.665.8500
F: 215.864.8999

*Attorneys for Defendants*

---

[11]   Although Perrong uses the word "information," he has alleged no information supporting what is, in fact, pure speculation.