IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>MACY'S INC., DEPARTMENT STORES NATIONAL BANK, FDS BANK, and MACY'S CREDIT AND CUSTOMER SERVICES, INC.,<br><br>　　　　　　　　　　Defendants. | CIVIL ACTION NO. 18-1382 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO STAY PROCEEDINGS

This case is part of a troubling trend of manufacturing Telephone Consumer Protection Act ("TCPA") cases to wrest settlement dollars through the threat of litigation costs and exposure. While Plaintiff insists his intentions are pure, his actions tell a much different story. Phase One discovery established that Plaintiff – a college junior in Washington DC – has filed a whopping forty five (45) TCPA lawsuits based on at least twelve (12) different phone numbers.[1]

---

[1] *See Perrong v. Secure Auto. Solutions, Inc.*, No. 2:18-cv-02864 (E.D. Pa filed July 9, 2018); *Perrong v. Cardo Windows Inc.*, No. 1:18-cv-11309 (D.N.J. filed July 3, 2018); *Perrong v. Advanced Brokerage Concepts LLC*, No. No. 2:18-cv-02624 (E.D. Pa. filed June 21, 2018); *Perrong v. McAveney*, No. 2:18-cv-02524 (E.D. Pa. filed June 15, 2018); *Perrong v. Capital Comeback LLC*, No. 3:18-cv-10017 (D.N.J. filed June 1, 2018); *Perrong v. Voisel LLC*, No. 2:18-cv-02227 (E.D. Pa. filed May 29, 2018); *Perrong v. Am. Renovation Ctr. Inc.*, No. 2:18-cv-02069 (E.D. Pa. filed May 17, 2018); *Perrong v. Liberty Power Corp.*, No. 1:18-cv-712 (D. Del. filed May 11, 2018); *Perrong v. Washington Inv. Grp. LLC*, No. 2:18-cv-01934 (E.D. Pa. filed May 8, 2018); *Perrong v. Macy's Inc.*, No. 2:18-cv-01382 (E.D. Pa. filed Apr. 2, 2018); *Perrong v. Macy's Inc.*, No. 2:18-cv-01382 (E.D. Pa. filed Apr. 2, 2018); *Charvat v. Santanna Nat. Gas Corp.*, No. 1:18-cv-2310 (N.D. Il. filed Mar. 30, 2018); *Perrong v. Direct Client Servs.*, No. 2018-02847 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Feb. 2, 2018); *Perrong v. Choice Energy LLC*, No. 2017-28953 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 18, 2017); *Perrong v. DNG Complete Home Improvement Corp.*, No. 2017-28894 (Pa. Ct. Com. Pl.,

**Plaintiff filed 45 different TCPA lawsuits** yet claims he is not in the business of TCPA litigation.

While most complaints are carefully crafted to imply long-term phone ownership and to avoid concessions of wrongdoing, Plaintiff's most recent filing brazenly details his efforts to bait a business into violating the TCPA. In *Perrong v. Secure Automotive Solutions, Inc., et al*, Case

---

Montgomery Cnty. filed Dec. 15, 2017); *Perrong v. Attorneys Tax Relief LLC*, No. 2017-28483 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. Penn Foster Edu. Grp. Inc.*, No. 2017-28362 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. Smith*, No. 2017-28359 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. HBW Leads LLC*, No. 2:17-cv-05442 (E.D. Pa. filed Dec. 4, 2017); *Perrong v. Consumer Advocacy Ctr. Inc.*, No. 2017-27877 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Nov. 29, 2017); *Perrong v. H&R Chimney Corp.*, No. 2017-27206 (Pa. Ct. Com. Pl., Montgomery Cnty. Filed Nov. 17, 2017); *Perrong v. William Novick Agency LLC*, No. 2:17-04172 (E.D. Pa. filed Sept. 19, 2017); *Perrong v. TranzVia LLC*, No. 2:17-cv-03664 (E.D. Pa. filed Aug 14, 2017); *Perrong v. Sussman Inc.*, No. 2:17-cv-03511 (E.D. Pa. filed Aug. 7, 2017); *Perrong v. Perlow*, No. CV-224-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed Aug. 3, 2017); *Perrong v. Lednor Corp.*, No. 2:17-cv-03452 (E.D. Pa. filed Aug. 2, 2017); *Perrong v. Ripple*, No. CV-221-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed Aug. 2, 2017); *Perrong v. Smith*, No. 2:17-cv-03366 (E.D. Pa. filed July 27, 2017); *Perrong v. Just Energy*, No. CV-195-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed July 7, 2017); *Perrong v. Greenlight Energy Inc.*, No. CV-194-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed July 7, 2017); *Perrong v. Verizon Commc'ns. Inc.*, No. CV-181-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 21, 2017); *Perrong v. Ins. Resource Grp.*, No. CV-176-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 21, 2017); *Perrong v. Hamilton*, No. CV-164-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 8, 2017); *Perrong v. MJB Mktg. Inc.*, No. CV-159-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed May 31, 2017); *Perrong v. Arevalo*, No. CV-146-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed May 18, 2017); *Perrong v. Elite Chimney Sols. Inc.*, No. 2:17-cv-01512 (E.D. Pa. filed Apr. 3, 2017); *Perrong v. FIG Capital LLC*, No. CV-167-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed July 22, 2016); *Perrong v. Trademark Publ. Inc.*, No. CV-140-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed June 16, 2016); *Perrong v. Merchant Funding Sols. LLC*, No. CV-125-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed June 7, 2016); *Perrong v. Student Debt Doctor LLC*, No. CV-109-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed May 18, 2016); *Perrong v. Aspen Home Improvements Inc.*, No. 5:15-cv-04023 (E.D. Pa. filed July 21, 2015); *Perrong v. The Student Loan Grp.*, No. 2:15-cv-02634 (E.D. Pa. filed May 11, 2015); *Perrong v. 800 Repairs Corp.*, No. CV-128-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed May. 14, 2015); *Perrong v. Risen Capital LLC*, No. 2:15-cv-01807 (E.D. Pa. filed Apr. 7, 2015); *Perrong v. Maximum Security Alarm Inc.*, No. CV-8-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed Jan. 14, 2015); *Perrong v. Frontier Utils. Ne. LLC*, No. CV-7-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed Jan. 14, 2015).

2:21-cv-02864 (filed July 9, 2018) ("SAS Complaint"), Plaintiff explains how he told SAS it could charge his credit card while simultaneously blocking the credit card charge with his provider, knowing and intending that SAS would call to complete the transaction, thereby inducing an allegedly actionable violation of the TCPA.  *See* SAS Complaint ¶¶ 21-27 (alleging he made the purchase during his initial contact with SAS "for the sole purpose of identifying" defendant).

This is a small window into the business Plaintiff has created.  And it is exactly the litigation abuse that the Federal Communications Commission (the "Commission" or "FCC"), which is empowered to regulate the TCPA, and Congress have warned against.  FCC Chairman Ajit Pai has repeatedly warned that "[t]he TCPA has become the poster child for lawsuit abuse."[2] Congressman Bob Goodlatte, Chairman of the House Judiciary Committee, notably surmised that the TCPA is "being exploited" by plaintiffs "seeking big payouts" against "U.S. businesses that are not actually violating the law."[3]

FCC commissioners have largely focused on wrong and reassigned number litigation as the foundation of that abuse.  Chairman Pai has repeatedly argued that callers should not be liable for wrong or reassigned number calls if they reasonably believed the number belonged to the person they were trying to reach; explaining that this protects an individual's right to revoke consent while also "giv[ing] legitimate businesses a clear and administrable means of complying with the law and engaging in 'normal, expected or desired communications [with] their

---

[2]  *See In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8073 (2015) (Pai, Comm., dissenting).

[3]  Available at https://judiciary.house.gov/press-release/goodlatte-statement-hearing-lawsuit-abuse-telephone-consumer-protection-act/ (last accessed July 19, 2018).

customers.'"[4] Commissioner O'Rielly has advocated the same point,[5] reasoning that "[t]his commonsense approach would have allowed a company to reasonably rely on consent obtained for a particular number." FCC Commissioner Carr also criticized wrong number liability for subjecting "legitimate businesses to liability."[6]

Fortunately, the FCC recently announced it will be issuing guidance on liability for wrong or reassigned number calls. In light of their public statements on this issue, it seems clear that the FCC is going to severely curtail—if not entirely jettison—liability on reassigned numbers.[7] The FCC's forthcoming guidance on this issue will be binding on this Court under the Hobbs Act. 47 U.S.C.S. § 402(a).

Plaintiff's claim against DSNB is grounded in a "reassigned number." Although Plaintiff's Complaint suggests he has had the number since 2003, his counsel conceded that Plaintiff only recently obtained the phone number. Early investigations and discovery have also shown that the number recently was the land line of DSNB customer Robert Dailey, who consented to receive calls from DSNB. Publicly available records report that the number still belongs to Mr. Dailey. Yet despite DSNB thinking it was calling Mr. Dailey, and there being no

---

[4]   *See In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8078-81 (2015) (Pai, Comm., dissenting).

[5]   Available at https://docs.fcc.gov/public/attachments/FCC-15-72A6.pdf (page 11) (last accessed July 19, 2018).

[6]   Available at https://www.fcc.gov/document/commissioner-carr-statement-dc-circuit-decision (last accessed July 19, 2018).

[7]   The FCC is a five commissioner body, such that only three commissioners need to agree to issue such guidance and, as noted above, the majority of that body have already spoken out against wrong or reassigned number liability.

way for DSNB to know otherwise, Plaintiff claims the calls were being made to him and that DSNB violated the TCPA because Plaintiff did not consent to such calls.

Plaintiff's conduct in putting together his TCPA claims is troubling – and similar conduct was understandably drawn the ire of the Courts. But since his claim is grounded entirely in his assumption that DSNB can be held liable for calls to reassigned numbers and the class he seeks to represent involves only individuals who received wrong number calls, a foundational question as to whether DSNB can be held liable in this case remains unanswered. The FCC's forthcoming guidance will answer that question and, thus, will not only impact this case, it will control this case and very well may obviate Plaintiff's claim. At a minimum, the FCC's guidance will streamline what would otherwise be costly and extensive discovery and motion practice—in a case that has all the hallmarks of being manufactured by Plaintiff. Conversely, granting a stay here will cause no prejudice, as litigation holds are in place and Plaintiff concedes he is no longer receiving any calls from DSNB.

Accordingly, DSNB, respectfully requests that this Court stay all proceedings pending the FCC's forthcoming guidance.[8]

## I.     STATEMENT OF FACTS

Plaintiff alleges that between December 4 and December 13, 2017, DSNB placed thirty calls to 215-757-0689 (the "Number") with prerecorded or artificial voices without his prior express consent. Compl. ¶¶ 36–65. While Plaintiff's carefully worded allegations suggest he had this number since 2003, his counsel conceded at the Rule 16 conference that Plaintiff only recently obtained the Number. The Number was, in fact, until recently owned by Robert and

---

[8]     Although DSNB's motion to dismiss the complaint for lack of standing has been fully briefed, Dkt. 10], DSNB files its motion to stay now to avoid any claims of delay or prejudice.

5

Jennifer Dailey. Indeed, public records and vendor databases continue to report the Number as belonging to the Mr. Dailey and being a landline. Mr. and Mrs. Dailey have confirmed that the Number was their former landline, that they voluntarily provided DSNB with the Number and consented to calls to the Number, and that they only recently abandoned the landline phone number.

Consistent with the conduct that gave rise to his other TCPA claims, Plaintiff purchased the Number and alleges he ported it to his cell phone. He now claims that DSNB's calls violated the TCPA because **he** purportedly did not consent to the calls. He seeks to represent a class of all persons to whom:

> (a) Macy's and/or a third-party acting on its behalf made one or more non-emergency telephone calls; (b) at a cellular telephone number or number for which the called party is charged for the call; (c) using an artificial or prerecorded voice; (d) purporting or attempting to collect a debt; (e) which called parties had never had a Macy's credit card;[9] (f) at any time in the period that begin on the date four years before the filing of the original complaint in this case and ends at the date of trial.

Compl. ¶ 72.

In light of Plaintiff's individual claims and class definition, it is clear that the question of DSNB's liability for calling wrong or reassigned numbers will be a core – if not the core – legal issue in this case.

---

[9]  Plaintiff wrongly presumes that if the individual never had a Macy's credit card, they could have never consented, such that each call was a wrong number call.

## II.     STATUTORY AND REGULATORY BACKGROUND

### A.     The TCPA

The TCPA "makes it unlawful to use an automatic telephone dialing system ("ATDS") . . . without the prior express consent of the called party, to call . . . any cellular telephone . . . ." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 368 (2012). (citing 47 U.S.C. § 227(b)(1)(A)). Congress empowered the FCC to "prescribe regulations to implement" the TCPA. *Id.* § 227(b)(2).

### B.     The 2015 FCC Order

In 2015, the FCC issued guidance addressing the appropriate scope of liability for calls to reassigned numbers. *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7996 (2015) ("2015 FCC Order"). The FCC held that callers get a "one call" safe harbor, but that subsequent wrong number calls violate the TCPA unless the caller has the consent of the new subscriber or customary user of the phone. *Id*. at 8001.

### C.     The D.C. Circuit's Opinion in *ACA*

In March, 2018, the 2015 FCC Order was largely set aside by the United States Court of Appeals for the District of Columbia Circuit in March of 2018 in *ACA International v. FCC* 885 F.3d 687 (D.C. Cir. 2018). Because the Judicial Panel on Multidistrict Litigation consolidated all petitions in the D.C. Circuit, the *ACA* decision is binding on all federal courts.[10]

---

[10]     "28 U.S.C. § 2112 requires that the multidistrict litigation panel consolidate the petitions and assign them to a single circuit. Challenges to the 2015 Order were assigned to the D.C. Circuit, which thereby became 'the sole forum for addressing . . . the validity of the FCC's' order." *King v. Time Warner Cable, Inc.*, ___ F.3d ___, ____, 2018 U.S. App. LEXIS 17880, at *8, n.3 (2d Cir. June 29, 2018) (quoting *GTE S., Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999)).

Among other things, the D.C. Circuit "set aside the Commission's treatment of reassigned numbers as a whole," finding that the FCC's prior guidance on liability for wrong number calls could not stand because "the one-call safe harbor is arbitrary and capricious" and irreconcilable with the statute, which had been previously interpreted to require only reasonable reliance. 885 F.3d at 709, 705.

The D.C. Circuit further highlighted the FCC's concession that "even the most careful caller, after employing all reasonably available tools to learn about reassignments, 'may nevertheless not learn of reassignment before placing a call to a new subscriber'" and that "a caller's reasonable reliance on the previous subscriber's consent would be just as reasonable for the second call." *Id.* 705-07 (quoting 30 FCC Rcd. at 8009).

Because the court could not conclude "without any substantial doubt" that the FCC would have held callers liable for reassigned or wrong number calls without the safe harbor, it vacated the FCC's treatment of reassigned numbers in its entirety. *Id*. at 708. It then strongly suggested that the Commission again address the issue. *Id.* at 709.

    D.    <u>The FCC Advises It Intends To Address Liability For Reassigned And Wrong Number Calls</u>.

Less than two months later, the FCC issued a Public Notice advising of its intent to issue guidance, and seeking commentary to be considered when developing such guidance, on the scope of liability and treatment of reassigned numbers, including the meaning of "called party" under the TCPA. FCC Public Notice, CG Docket No. 18-152 (filed May 14, 2018) ("FCC Public Notice").[11] Specifically, the FCC requested comment on:

---

[11]     This notice was made in response to the U.S. Chamber of Commerce and a number of other organizations and associations petition to the FCC for a declaratory ruling to clarify the issues addressed by *ACA*. *See* U.S. Chamber Institute for Legal Reform et al, Petition for Declaratory Ruling, CG Docket No. 02-278 (filed May 3, 2018) ("US Chamber

8

- "how to interpret the term 'called party' for calls to reassigned numbers. Does the 'called party' refer to "the person the caller expected to reach'? Or does it refer to the party the caller reasonable expected to reach? Or does it refer to the 'person actually reached, the wireless number's present day subscriber after reassignment'?" *Id*. at 3.

- "What interpretation [of 'called party'] best implements the statute in light of the [*ACA*] decision?" *Id*.

- "Should we maintain our reasonable-reliance approach to prior express consent?" *Id*.

- "How should the Commission's proceeding to establish a reassigned numbers database impact our interpretation, if at all?" *Id*. at 4.

The Public Notice's comment period ended on June 13, 2018, and reply comments were due by June 28, 2018. *Id*. at 1.

**Every indication is that the FCC will find that "called party" is defined to mean only the intended recipient such that businesses *cannot* be held liable for reassigned or wrong number calls**. FCC Chairman Pai penned a forceful dissent to the FCC's 2015 Order that expressly rejected liability for reassigned numbers. 30 FCC Rcd at 8079-81 (Pai, Comm. dissenting). Chairman Pai repeated his concern about rampant TCPA litigation abuse and concluded that the best "reading of the statute" is to interpret "the term 'called party' to mean the expected recipient—that is the party expected to answer the call," which means callers would not be liable if they reasonably believed the number belonged to someone who provided consent *Id.* at 8078. He further explained that this interpretation protects an individual's right to revoke consent while also "giv[ing] legitimate businesses a clear and administrable means of complying

---

Petition") (The "TCPA landscape is dysfunctional and in need of clarity from the FCC.") The petitioners further observed that the TCPA statute, which was originally intended to target a specific abusive telemarketing practice, has been turned into a "breeding ground for frivolous lawsuits against legitimate businesses trying to communicate with their customers." *Id*.

9

with the law and engaging in 'normal, expected or desired communications [with] their customers.'" *Id.* at 8079 (quoting Report of the Energy and Commerce Committee of the U.S. House of Representatives, H.R. Rep. 102-317, at 17 (1991)).

FCC Commissioner O'Rielly similarly dissented in 2015 on this same point, also advocating that the term "called party" should mean "intended recipient" such that businesses would not be held liable for wrong or reassigned number calls.[12] He reasoned that "[t]his commonsense approach would have allowed a company to reasonably rely on consent obtained for a particular number." FCC Commissioner Carr also criticized the FCC's 2015 Order for subjecting "legitimate businesses to liability."[13]

Commissioners Pai, O'Rielly and Carr are currently commissioners of the FCC. The FCC is a five commissioner body, requiring only three votes to issue guidance. 47 U.S.C. § 154. Two of the current commissioners have expressly stated that businesses should not be liable for calls to reassigned numbers and a third has strongly implied it.

Thus, every indication is that the FCC's forthcoming guidance will eliminate liability for wrong or reassigned number calls, and thereby obviate this case.

### III.   ARGUMENT

As a matter of primary jurisdiction, in the interests of judicial economy, to avoid undue burden on the parties and the Court, and because the FCC's forthcoming guidance will be controlling as to the core issue in this case, DSNB requests that the Court stay all proceedings

---

[12]   Available at https://docs.fcc.gov/public/attachments/FCC-15-72A6.pdf (page 11) (last accessed July 19, 2018).

[13]   Available at https://www.fcc.gov/document/commissioner-carr-statement-dc-circuit-decision (last accessed July 19, 2018).

until after the FCC issues its new ruling clarifying the appropriate treatment of reassigned phone numbers and liability for wrong number calls.

  A.  <u>The Primary Jurisdiction Doctrine</u>

  The doctrine of primary jurisdiction applies where "enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspending pending referral of such issues to the administrative body for its views." *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1952); *see also U.S. v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963) (the doctrine should be invoked where "the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."); *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.3d 732, 736 (3d Cir. 1983) ("[T]he principal justification is the need for an orderly and sensible coordination of the work of agencies and courts."). Where the doctrine applies, "[i]t requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993); *Phone-Tel Commc'ns. v. AT&T Corp.*, 100 F. Supp. 2d 313, 314–21 (E.D. Pa. 2000) ("[R]eferral to the FCC, in the first instance, of issues which the court finds within the FCC's special competence is mandatory.").

  In the Third Circuit, invoking the doctrine requires examination of the following factors: Whether "(1) the question at issue . . . involves technical or policy considerations within the agency's particular field of expertise; (2) . . . the question at issue is particularly within the agency's discretion; (3) . . . there exists a substantial danger of inconsistent rulings; (4) . . . a prior application to the agency has been made." *Global Naps, Inc. v. Bell Atl.-N.J., Inc.*, 287 F. Supp. 2d 532, 549 (D.N.J. 2003); *see also Paetec Commc'ns. v. Corecomm-Atx, Inc.*, No. 01-

11

5298, 2002 U.S. Dist. LEXIS 18865, at *4–5 (E.D. Pa. Oct. 4, 2002) (staying case pending FCC ruling).

Examination of each of these factors shows that each favors invoking the primary jurisdiction doctrine and staying this case.[14]

### 1. Treatment of Reassigned Numbers and the Definition of "Called Party" Is Within the FCC's Realm of Technical and Policy Expertise.

There is no dispute that this is a wrong or reassigned number case where DSNB was trying to reach a customer and prior subscriber who consented to calls from DSNB. Plaintiff insists that because DSNB reached him instead, it is liable under the TCPA. *See* Compl. ¶¶ 36–71. Thus, resolution of this dispute hinges entirely on the exact issue before the FCC. *See* FCC Public Notice at 3.

The FCC's interpretive authority to construe the TCPA's provisions and corresponding regulations is clearly established. *See FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981). And the FCC's Public Notice illuminates just why it is critical that the agency do so: questions of the treatment of reassigned numbers and the term "called party" implicate policy choices and regulatory tools that only the agency has at its disposal. FCC Public Notice at 3–4 (requesting comment on what constitutes a "called party"); *see also ACA Int'l*, 885 F.3d at 693 ("As Congress explained, the FCC 'should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy.'") (quoting 47 U.S.C. § 227 note, Pub. L. No. 102-243, § 2(13), 105 Stat. 2394, 2395)).

---

[14] Of course, the Court may always grant a stay under *Landis v. North American Company*, which established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for its litigants." 299 U.S. 248, 254 (1936); *see also Rajput v. Synchrony Bank*, 221 F. Supp. 3d 607, 616 (M.D. Pa. 2016) (granting a *Landis* stay).

Courts in this Circuit have repeatedly recognized the wisdom of staying a case while the FCC takes comment and rules on such issues. *See, e.g., Iowa Network Servs., Inc. v. AT&T Corp.*, No. 14-3439, 2015 U.S. Dist. LEXIS 139968, at *20–23 (D.N.J. Oct. 14, 2015) (staying case upon finding the Court was "unfamiliar" with the terms and issues surrounding relationships between long distance and local telephone service carriers and that identical issues were pending in another action before the FCC); *Aronson v. IDT Corp.*, No. 02-1706, 2003 U.S. Dist. LEXIS 6659, at *12–15 (W.D. Pa. Apr. 3, 2003) (granting motion for stay where the core of the lawsuit required a decision regarding the "reasonableness or lawfulness of a practice" which was within the FCC's expertise and competence to weigh the "nuances and policies" to resolve the issue); *Paetec Communs.*, 2002 U.S. Dist. LEXIS 18865, at *4–5 (staying case pending FCC ruling after considering the agency's technical expertise, uniformity in the realm of the agency's power, and agency discretion to formulate regulatory policy); *Phone-Tel*, 100 F. Supp. 2d at 314–21; *see also Global Naps*, 287 F. Supp. 2d at 548–50 (finding a stay was appropriate because the Telecommunications Act's regulatory scheme that provided that the agency should oversee the reasonableness of the terms at issue).

*Phone-Tel Communications* is particularly instructive. 100 F. Supp. 2d 313 (E.D. Pa. 2000). The *Phone-Tel* plaintiff sought reimbursement under the Telecommunications Act's regulatory scheme providing for fair compensation for calls made to payphones. *Id*. at 315. While plaintiff argued it was a "simple collection" case, defendant averred that the technical and policy issues implicated fell within the FCC's discretion and expertise. *Id*. After a careful analysis of the primary jurisdiction doctrine, the court agreed with defendant and stayed the case. *Id*. at 314–321.

A central point of the *Phone-Tel* court's analysis was that resolution of the ultimate issue required reference to the definition of a "completed" call, a term used in the statute. *Id*. at 320. The court recognized that at "first glance, the issue of what constitutes a 'completed' call appears to be one of statutory interpretation well within the conventional experience of judges." *Id*. at 321.  However, upon further examination, the court determined that the issue was dependent on complex technological issues, and therefore, for the court to "divine a definition" in such circumstances would be "an empty gesture." *Id*.  The court stayed the case pending the FCC's ruling on the definition of a "completed" call and related issues. *Id*. at 322.

Like *Phone-Tel*, this case turns on the definition of a single term.  A core issue of liability depends on the definition of the term "called party."  *See, e.g.*, *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 326-27 (3d Cir. 2015) (consent of the "called party" is binding on all TCPA plaintiffs regardless of whether they are themselves the called party); *id.* (an actual recipient of a call who brings a TCPA lawsuit is bound by the consent of the "called party" even if it is a different person).  Defining this term requires weighing of judgments on policy and technical issues squarely within the purview of the FCC.  This is evidenced by the fact that the FCC has previously defined the term, and the Courts have unequivocally relied upon that expert definition in adjudicating TCPA claims.  It is, simply stated, an issue for the FCC to decide.  Conveniently, the FCC is currently in the process of defining "called party" since its prior definition was vacated by *ACA*.

In light of the above, the first factor clearly favors a stay under the primary jurisdiction doctrine.

        2.    Issuance of Regulations and Policy Decisions related to Reassigned Numbers Have Been Delegated to the FCC by Congress.

The treatment of reassigned numbers "fits squarely within" Congress's delegation of TCPA rulemaking authority to the FCC. The TCPA expressly states that "[t]he Commission shall prescribe regulations to implement the requirements of this subsection." 47 U.S.C. § 227(b)(2); *see also ACA*, 885 F.3d at 693 ("The TCPA vests the Commission with responsibility to promulgate regulations implementing the Act's requirements.")

Additionally, both the judicial and congressional branches acknowledge the FCC has primary authority to regulate in this area. The Supreme Court has repeatedly emphasized that the "FCC's judgment regarding how the public interest is best served is entitled to substantial judicial deference." *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981). Further, under the Hobbs Act, this Court is respectfully bound to follow any decision by the FCC interpreting the TCPA. *See, e.g.*, *Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302, 1307 (11th Cir. 2015) ("District courts may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation. . . . If the Hobbs Act applies, a district court must afford FCC final orders deference and may only consider whether the alleged action violates FCC rules or regulations.") (internal citation omitted).

Finally, and critically here, the current Chairman of the FCC has publically stated that he believes "called party" should be defined as the intended recipient – not the actual recipient or subscriber of the phone – which, if adopted, will obviate Plaintiff's claim. *See* FCC Public Notice; 30 FCC Rcd at 8079-81 (Pai, Comm., dissenting). This sentiment has been echoed by other FCC Commissioners O'Rielly (noting that defining "called party" as "intended recipient" was the "commonsense approach) and Carr (criticizing the FCC's 2015 Order for subjecting "legitimate businesses to liability.") Thus, every indication is that the FCC will rule in the near future that DSNB cannot be held liable in this case. It seems then that the only reason to not stay

this case is to try to push it through before the FCC issues its guidance, which is clearly not proper and feeds the danger of inconsistent rulings.

        3.      There is a Danger of Inconsistent Court Decisions Regarding Reassigned Numbers.

As discussed above, the treatment of reassigned numbers and the appropriate definition of "called party" in that context requires careful technical and policy considerations that the FCC undertakes on a regular basis. Because courts, by their very nature do not possess the same expertise, there is real risk (and experience shows) that they will deliver inconsistent rulings. For example, in the face of the uncertainty over what constitutes an ATDS after *ACA International*, courts have already started adopting different positions. *Compare Dominguez v. Yahoo, Inc.*, No. 17-1243, 2018 U.S. App. LEXIS 17436, at *9 (3d Cir. June 26, 2018) (holding that to qualify as an ATDS the technology used must "function[] as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers"); *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 U.S. Dist. LEXIS 83744, at *18-20 (D. Ariz. May 14, 2018) (concluding that *ACA International* vacated the FCC's prior ATDS rulings that had held a predictive dialer to be an ATDS and that the predictive dialer at issue was not an ATDS); *Marshall v. CBE Grp., Inc.*, No. 2:16-cv-2406-GMN-NJK, 2018 WL 1567852, at *4-5, 7 (D. Nev. Mar. 30, 2018) (rejecting plaintiff's argument that a predictive dialer qualified as an ATDS); *with Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 80690, at *29 (S.D. Fla. May 14, 2018) (holding that predictive dialers qualify as ATDSs). This is exactly the harm (let alone compliance nightmare) that the primary jurisdiction doctrine is designed to avoid.

Moreover, Judge Goodman, in issuing the outlier decision in *Reyes,* concluded that he was bound to follow prior FCC orders, but recognized that "*ACA International* arguably calls

into doubt the FCC's previous broad statements that predictive dialers are ATDSs regardless of whether they call randomly or from a sequential list or a set list of numbers." *Reyes*, 2018 U.S. Dist. LEXIS, at *35-36. This Court does not need to be placed in the unenviable position of reaching a decision in the face of this legal uncertainty; instead, a stay will allow the Court to apply the standards adopted by the FCC.[15] *See id.* at *36 ("[A]bsent an express rejection of the prior FCC orders, the Court cannot deviate from them and impose my own interpretation of the TCPA.").

The inconsistent opinions discussed above highlight the need for uniform application of the TCPA, a federal law whose meaning should not change based on the particular jurisdiction in which a lawsuit is filed. As demonstrated by the Public Notice, the FCC has admitted there are many open issues regarding the treatment of reassigned numbers that need to be uniformly resolved. Allowing the FCC to address these issues will help avoid the significant risk of inconsistent decisions by courts. *See, e.g.*, *Gusman v. Comcast Corp.*, No. 13-cv-1049-GPC(DHB), 2014 U.S. Dist. LEXIS 69918, at *7 (S.D. Cal. May 21, 2014) ("The FCC has regulatory authority that subjects the industry to a comprehensive regulatory scheme that requires expertise or uniformity in administration.") (internal quotations omitted)); *Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1090 (9th Cir. 2006) (holding that FCC should decide issue within its expertise given concerns with uniform application and the FCC's "indication that it will determine this issue in due course"). The FCC, "no surprise, is familiar with the regulations it prescribed and possesses expertise over the statute it implements, whether that expertise comes in the form of technical experts, agency lawyers or agency staff in a

---

[15] Judge Goodman also recognized that prior Eleventh Circuit district cases deciding what constituted an ATDS "based" their decisions on prior FCC's orders, *id.* at *20, which the FCC Public Notice has now called into question.

17

position to obtain input from the relevant stakeholders." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 467 (6th Cir. 2010) (internal citations omitted).

Delegation to the FCC alleviates this danger, which is precisely why the FCC was created. *Howard*, 208 F.3d at 752 ("Congress created the FCC to enforce the Communications Act.")[16] (quoting *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981)). Thus, a stay of this proceeding would promote judicial economy and save the parties and the Court the time, expense, and uncertainty of litigating a case for which the status of the law on dispositive issues is currently in flux. Because the proper administration of the TCPA depends on uniformity, this factor favors a stay as well.

        4.       The FCC has Recognized its Duty to Rule on this Issue.

The fourth factor is whether a prior application has been made to the agency to rule on the issue. As noted above, the U.S. Chamber of Commerce and a number of other organizations and associations requested that the FCC "expeditiously issue a declaratory ruling" to clarify the definition of ATDS in light of *ACA International*. *See* US Chamber Petition. The FCC has already issued a Public Notice seeking comment on the scope of liability and treatment of reassigned numbers, including the meaning of "called party" in the context and whether the Commission should establish a reassigned numbers database. *See* FCC Public Notice. Therefore, this final factor supports a stay.

### IV.    CONCLUSION

---

[16]    Added in 1991, the TCPA amends the Communications Act of 1934. *See* 105 Stat. 2394 (Dec. 20, 1991).

Clearly all four factors for primary jurisdiction support a stay pending resolution of the wrong and reassigned number issues by the FCC. Judicial efficiency similarly supports issuance of a stay (consider the waste if after months of costly discovery and motions the FCC rules that there is no liability for such calls – a likely outcome given the comments of the current Chairman of the FCC). Indeed, the undersigned cannot surmise any justifiable reason not to stay this case – legal holds are in place and Plaintiff is no longer receiving any calls – while the risk of judicial and party waste is very high.

Accordingly, DSNB respectfully requests this Court grant its motion to stay this case until the FCC issues its forthcoming decision on the scope of liability under the TCPA for calls made to reassigned numbers.

Respectfully submitted,

DATED: July 25, 2018

 */s/ Daniel JT McKenna*
Daniel JT McKenna, Esq. (Pa. I.D. 93930)
mckennad@ballardspahr.com
Jenny N. Perkins, Esq. (Pa. I.D. 306498)
perkinsj@ballardspahr.com
Elanor A. Mulhern (Pa. I.D. 322185)
mulherne@ballardsphar.com
Wesley S. Stevenson (Pa. I.D. 324269)
stevensonw@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: 215.665.8500
F: 215.864.8999

*Attorneys for Defendants*